United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CITY OF DALY CITY,

Plaintiff,

v.

SPECIALTY NATIONAL INSURANCE COMPANY,

Defendant.

____________________________________/

No. C 08-03603 CW

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Defendant Specialty National Insurance Company has filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss each of Plaintiff City of Daly City's three claims against it. The City opposes the motion.

Having considered all of the papers filed by the parties, the Court DENIES Specialty's motion.

BACKGROUND

The following facts are alleged in the complaint. On July 17, 2001, the City and Specialty entered into a contract for Specialty to provide to the City liability insurance coverage for the one year period between July 1, 2001 and July 1, 2002. Pl.'s Ex. A, at 1. The contract included a $100,000 self-insured retention, which meant that the City was obliged to pay up to $100,000 for each occurrence before Specialty was required to pay any claim. Id. at

1. The contract covered defense costs, and provided that Specialty "shall have the right and opportunity to associate with the Insured in the defense, appeal and control of any Claim or suit . . . seeking Damages in excess of the Insured's Retained Limit." Id. at 1 of 16.

During the coverage period, the City was sued on two occasions which gave rise to the insurance claims at issue in this dispute. Each lawsuit alleged excessive force by police officers. The first was Ernest Espinoza and Juan Camberos v. City of Daly City, et al. (Case No. C-03-2896-SBA) (Espinoza), in which the court granted summary judgment for the City against Espinoza, and against Camberos on all but one claim. The City settled with Camberos for $15,000. The City incurred $116,912.46 in defense fees and costs for a total expenditure of $131,912.46. The second case was Junior Williams v. Daly City Police Officers, C. Austria and M. Price (Case No. C-02-02745-JSW) (Williams), which settled for $32,000. The City incurred $158,632.50 in defense costs and fees for a total expenditure of $191.132.50. The City characterizes both settlements as being for "nuisance value."

In Espinoza, the City's self-insured retention was exceeded after it settled on November 3, 2005. On July 17, 2006, the City tendered its Espinoza claim to Specialty. The initial tender was returned to the City as undeliverable. On August 8, 2006, the City contacted its insurance broker asking it to notify Specialty of the claim. On November 14, 2006, Specialty acknowledged the claim. On November 22, 2006, Specialty denied the claim, incorrectly asserting that defense costs were not included in the contract and therefore the $100,000 threshold had not been met. On February 2,

United States District Court
For the Northern District of California

2007, Specialty issued a second denial stating additional grounds not specified in the complaint.

The City initially tendered the Williams claim to the wrong insurer and correctly tendered the claim to Specialty on October 23, 2006. On November 3, 2006, Specialty acknowledged receipt of the claim. The case settled on December 13, 2006. On April 18, 2007, Specialty denied the claim, with the explanation that the City had given late notice and made voluntary payments in settling the matter.

On July 28, 2008, the City filed its complaint in this Court based on diversity jurisdiction.

The City pleads three causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory relief.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. See Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007).

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the the City. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

DISCUSSION

I. Breach of Contract Claim

A plaintiff must establish four elements in a breach of contract claim: "(1) the existence of a valid contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's unjustified or unexcused failure to perform; and (4) damage to the plaintiff." Lincoln Nat'l Corp. v. TakeCare, Inc., 1998 WL 281290, *3 (N.D. Cal.); First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).

An insurance contract provision is ambiguous when it is capable of two or more constructions, both of which are reasonable. Suarez v. Life Ins. Co. of North America, 206 Cal. App. 3d 1396, 1402 (1988). Whether a provision is ambiguous is a question of law. Id. Ambiguities in the contract are to be resolved in the insured's favor. E.M.M.I., Inc. v. Zurich American Ins. Co., 32 Cal. App. 4th 465, 471 (2004).

"[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are to be interpreted narrowly against the insurer." MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 648 (2003). Exclusionary clauses must be "conspicuous, plain and clear." Id. (emphasis in original).

The City alleges that clauses in the contract conflict, rendering it ambiguous. The first allegedly conflicting clause is Condition 3(B), which provides: "If Claim is made or suit is brought against the Insured, reasonably likely to involve the Company [Specialty], the Insured shall forward to the Company every demand, notice, summons or other process received by him . . .

immediately or within a reasonable time after the Insured has knowledge of the Claim or suit." Pl. Ex. A, at 12 of 16. The second conflicting clause, Condition 3(C), provides:

> The Insured shall not, except at its own cost, voluntarily make any payment, assume any obligation or incur any expenses; however, in the event that the amount of Ultimate Net Loss becomes certain either through trail [sic] court, judgment or agreement among the Insured, the claimant and the Company, then the Insured may pay the amount of Ultimate Net Loss to the claimant to effect settlement and . . . the Company shall indemnify the Insured for that part of such payment which is in excess of the Insured's Retained Limit, or will, upon request o [sic] the Insured, make such payment to the claimant on behalf of the Insured.

Id. at 12 of 16. The third conflicting clause, which is unenumerated, provides, "If a Claim is made or a suit is brought seeking Damages in excess of the Insured's Retained Limit, when Defense Costs are incurred on behalf of the Company the Insured shall notify the Company and all such costs shall be reasonable." Id. at 1 of 16 (defense costs clause). The fourth conflicting clause is Condition E, which provides:

> [F]ailure to give notice of any Occurrence which, at the time of its happening, did not appear to involve this Policy but which, at a later date, would appear to give rise to Claims hereunder, shall not prejudice such Claims . . . . [and correspondence regarding the Claim should be sent to Specialty] as soon as practicable, provided, however, that failure to give notice of any Occurrence or Wrongful Act which, at the time of its happening, did not appear to involve this Policy but which, at a later date, would appear to give rise to Claims hereunder, shall not prejudice such claims.

Id. at 14 of 16.

There is more than one reasonable interpretation of these clauses read together. The first, urged by Specialty, is that

voluntary payments,[1] even those under the self-insured limit, are prohibited without notice to and consent from Specialty. Condition 3(C) seems to support this interpretation. The second interpretation, urged by the City, is that it must notify Specialty of a claim once it is reasonably likely to exceed the self-insured retention, and that claims which initially do not seem reasonably likely to exceed the self-insured retention, but later do exceed it, are not precluded by a failure to provide notice when suit is initially filed against the City. The City argues that the language in Condition 3(C) about the amount "becom[ing] certain" weighs against Specialty's more restrictive reading. The City continues that it did not view the two lawsuits at issue as meritorious and that it acted reasonably by notifying Specialty in a timely manner when it became apparent that the self-insured retention would be exceeded. Under its interpretation, the City claims it acted reasonably and fulfilled its duties under the contract. Conditions 3(B) and (E) seem to support the City’s interpretation, as does the defense costs clause.

The City has stated a claim based on its interpretation of the ambiguous contract language and the reasonableness of the City's notice of both claims. Specialty's motion to dismiss is DENIED as to the breach of contract claim.

II. Breach of the Implied Covenant of Good Faith and Fair Dealing

A covenant of good faith and fair dealing is implied in every insurance contract. Egan v. Mutual of Omaha Insurance Co., 24

[1] The contract does not explicitly define "voluntary payment."

Cal. 3d 809, 818 (1979). "An insurer, like any other party to a contract, owes a general duty of good faith and fair dealing . . . . There are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1147, 1152 (1990).

The implied covenant of good faith and fair dealing acts as a "supplement to express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 36, 44 (1995). "Absent [a] contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'" Id. (quoting Love, 221 Cal. App. 3d at 1136, 1153).

Like the breach of contract claim, the City has stated a claim for breach of the implied covenant of good faith and fair dealing. Specialty's motion to dismiss is DENIED as to the breach of the implied covenant of good faith and fair dealing claim.

III. Declaratory Relief

Declaratory relief is available at the discretion of the district court. See 28 U.S.C. § 2201; Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998). Declaratory relief is an equitable remedy which "brings to the present a litigable controversy, which otherwise might only be tried in the future." Societe de Conditionnement v. Hunter Eng. Co., Inc., 655 F.2d 938 (9th Cir. 1981).

The claim for declaratory relief depends on a determination of the breach of contract claim. Because the latter is not dismissed, Specialty's motion to dismiss the former is also DENIED.

CONCLUSION

For the foregoing reasons, the Court DENIES Specialty's motion to dismiss.

IT IS SO ORDERED.

Dated: 11/17/08



CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California